Filed 12/13/13  In re Roger G. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ROGER G., a Person Coming Under the Juvenile Court Law. | B247829 |
| | (Los Angeles County Super. Ct. No. CK92943) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| MARIA R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Anthony Trendacosta, Referee.  Affirmed in part and reversed in part, with directions.

Janice A. Jenkins, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant Maria R. (mother) appeals a juvenile court order on the ground that it conflicts with the court's oral ruling regarding her right to visit her son Roger G. (Roger). We agree, in part, with mother's argument. We thus reverse the order, in part, with directions for the court to enter a new order accurately reflecting the court's ruling.

**BACKGROUND**

On August 8, 2012, the juvenile court declared Roger a dependent child of the court. He was about 16 months old at the time. The court also granted physical custody of the child to his biological father, Roger G., Sr. (father), who was 14 years old, on the condition that he reside with Roger's paternal grandmother. Father and paternal grandmother lived in Indianapolis, Indiana. Additionally, the court granted mother visitation rights and family reunification services, including individual counseling and drug treatment and testing programs.[1]

On September 24, 2012, the juvenile court entered an order requiring respondent Los Angeles County Department of Children and Family Services (Department) to arrange for Roger to be transported to father's Indiana home. In compliance with this order, the Department transported Roger to father's home on October 4, 2012.

According to a Department report, the juvenile court's order requiring the relocation of Roger to Indiana greatly upset mother. Mother stopped attending counseling and her drug program and ran away from her foster mother's home with her boyfriend.[2] Mother was 17 years old when she ran away. Mother's foster mother advised the Department that mother continued to use illegal drugs and that mother "wanted to be out of the [foster care] system once she is of age."

---

[1] In an unpublished opinion dated May 24, 2013, we affirmed the juvenile court's August 8, 2012, jurisdictional and dispositional order.

[2] Pursuant to an order in another juvenile dependency case, mother was detained from her own mother, S.C., and placed in foster care.

In late November 2012, the Department received a report from the Indiana Department of Child Services (Indiana Department). The report stated that Roger's home appeared to be clean and appropriate for Roger. It further stated that the Indiana Department denied the Department's request for a placement of Roger under Indiana's jurisdiction pursuant to the Interstate Compact on the Placement of Children. Roger thus remained under the jurisdiction of the juvenile court.

On February 6, 2013, the juvenile court held a hearing regarding Roger's case. Mother did not attend the hearing and her whereabouts were unknown to the Department and the court. At the hearing, the juvenile court orally announced its ruling. Later that day, the court issued a minute order.

It is undisputed that the juvenile court terminated mother's reunification services, granted father sole physical and legal custody of Roger, and terminated its jurisdiction over the matter. It is also undisputed that the court granted mother visitation rights. At the hearing, the court orally stated:

"Monitored visits for the mother once she contacts the Department and once she contacts the father.

"She's to keep the father advised at all times of her address and telephone number.

"Mother's visits will be monitored by any monitor. I presume the paternal grandparents will be a monitor. So any monitor agreed upon or monitor paid for by the mother, a professional monitor. If she goes to Indianapolis, she may have visits at least twice per month.

"Father's to advise the mother if and when he's going to come to California. And if he comes to California, he is to arrange for monitored visits for the mother."

The juvenile court's minute order stated: "Visits for mother shall be at least 1 time a month to include telephone contact, monitored after she contacts father and keeps him advised of her address. Visits are to be monitored by mutually agreed to monitor or a professional monitor paid for by mother. Father is to advise mother when he plans to come to California with the child to [arrange] a visit. Custody order to be submitted."

3

## DISCUSSION

As a general rule, when the record is silent, we make all presumptions in favor of the order appealed from. (*Yu v. University of La Verne* (2011) 196 Cal.App.4th 779, 792.) "Where there is a conflict between the juvenile court's statements in the reporter's transcript and the recitals in the clerk's transcript," however, "we presume the reporter's transcript is the more accurate." (*In re A.C.* (2011) 197 Cal.App.4th 796, 799-800.)

Here, there is a conflict between the juvenile court's oral statements at the hearing on February 6, 2013, and the minute order entered on that date. At the hearing, the juvenile court stated mother was permitted monitored visits in Indiana "at least *twice* per month." (Italics added.) The minute order, conversely, only allows at least one visit per month. Likewise, the court stated at the hearing that if Roger came to California, mother was entitled to "monitored visits," i.e. more than one visit. The minute order limits mother to "a visit." It thus appears the minute order does not accurately reflect the court's actual ruling with respect to visitation.[3]

Mother contends that the minute order conflicts with the court's oral ruling in two additional ways. The first alleged conflict is that the minute order states mother's telephone contacts must be "monitored," while the court allegedly did not state anything about whether the telephone visits needed to be monitored at the hearing. This is not, however, a true conflict between the reporter's transcript and the clerk's transcript. The juvenile court did not orally state that telephone contacts must be "unmonitored." We thus presume the minute order is correct.

Mother also argues that, "contrary to the provision in the minutes, the court did not require that mother keep father apprised of her whereabouts as a condition of having telephone contacts with the child." Nothing in the oral ruling of the court, however, expressly contradicts this provision in the minute order. We thus presume there is no error in the minute order regarding this issue.

---

[3]     We express no opinion about whether mother should have been granted at least one or at least two visits. That matter was well within the discretion of the juvenile court.

The Department contends that even if the minute order inaccurately states the juvenile court's oral ruling, we should take no action because mother can seek a modification of the order in the superior court. Certainly the superior court has jurisdiction to modify the February 6, 2013, order under family law principles if the circumstances justify such a modification. (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1705.) Mother, however, does not at this time seek to *modify* the order on any substantive grounds. Rather, she simply wants the order to accurately reflect the juvenile court's ruling regarding the issue of mother's visitation of Roger. We conclude that it is in the interests of justice to grant her this relief. It is important to note, however, that we are not addressing any other aspect of the juvenile court's February 6, 2013, order.

**DISPOSITION**

The juvenile court's order dated February 6, 2013, is reversed in part to reflect the juvenile court's oral ruling regarding mother's visitation of Roger and the juvenile court is directed to enter a new and different order consistent with this opinion. Otherwise, the juvenile court's order dated February 6, 2013, is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

ALDRICH, J.

5